Good morning, your honor. Not a good day to lose my voice. May it please the court, my name is Peter Hosharian and I am representing the petitioners in this matter, Autumn and Anna Holder. There are several issues in this case, the first of which I'll discuss, that whether or not the Board of Immigration Appeals erred in denying the petitioners' application for asylum by concluding that the petitioners failed to meet their burden of proof on their claims of freedom. Let me ask you a question. What evidence is there that he suffered a threat of persecution? Your honor, he specifically testified that during the Armenian elections, he was threatened by the Armenian council in the United States, not to go back to Armenia. What did the council say to him? Not to go back to Armenia, basically. The council had no authority over him. The council was not a persecuting figure, was it? Was that friendly advice or hostile advice? I think it could be deemed as an underhanded threat, you better not return or else you're going to face some serious trouble in Armenia if you return. Is that the threat? Is that his language, you're going to face serious trouble? No, Your Honor, but it could be implied because there was an argument. Well, no, but, you know, we've got to find some specific indication that he faced something. What was the council's language? Your Honor, I'll look for the exact language and come back on redirecting. The only other thing that I recall, anyway, was what somebody said to some member of his family in Armenia, and I'd like to ask what was specific about that? Well, there were threats to his in-laws. No, no, but to him. Threat to an in-law is not a ground to get asylum in this country. Right, well, there were... What was the threat to him? The threat to him was that he was supporting... No, what was the threat? The threat to him was not to return... No, what was the threat? What was he threatened with? What's the or else? Or else he would be persecuted just like other... No, no, wait a minute. The word persecuted is not used by a persecutor. Well, he would be threatened in that... No, what was he threatened with? Execution? Was he threatened with execution? There was no specific threat of execution. There was no threat of execution. You don't need to use the word specific. There was no threat of execution. Was he threatened with lifelong imprisonment? No specific threat. Please don't use that word specific. There was no threat of... Was there any threat of imprisonment? There was no threat of imprisonment. All right, so what was he threatened with? Well, he was warned not to go back to Armenia because he was a supporter of Stepan Demirci. But that's not a... There's no sanction there. Don't go back. What does that mean? Well, Your Honor, the implication is that he did know that people knew he was an ardent supporter of Mr. Demirci and that he was involved in his party. But what does that mean if there's no sanction attached to it? Well, Your Honor, it could be facts that lead to a specific, well-founded fear of persecution. Why? Of what? What persecution? Of what? Well, knowing what happened to his family members in Armenia, knowing what is going on with the party members in Armenia, that it could be reasonably inferred that the petitioner could develop a well-founded fear of future persecution. Of what? You can use the word persecution. It's nice because it matches the statute. But... Threats, arrests... So maybe if he goes back to Armenia, he'll be threatened with something. Is that persecution? Imprisoned. And what support in the record is there that imprisonment is a serious prospect for him? Well, there's... His family has been, in Armenia, has been... These are his in-laws. Beaten. His cousin was beaten severely. His cousin. His in-laws. They're not him. Well, I understand that, Your Honor, but he... Mr. Demirchian is still in Armenia. Is that correct? As far as I know, Your Honor, yes. Okay. Is he in prison? I don't believe so. Okay. But Mr. Demirchian is the principal. Your client is claiming that because of his support for Mr. Demirchian, that he'll be persecuted if he returns to Armenia. But Mr. Demirchian himself is in Armenia, and there's no evidence in the record that I could find that suggested that Mr. Demirchian has been persecuted. Well, Mr. Demirchian has also written a letter to... in the consolidated case for the motion to reopen, to Mr. Mnuchin, stating... Well, we know from that that Mr. Demirchian is able to communicate with the outside world. I'm not sure that bolsters your claim for persecution. Well, that's correct, but, Your Honor, he's a very known figure and a politically sensitive issue worldwide to actually persecute the man in charge. And other times they persecute their underlings and not persecute the man in charge so as to not evoke international attention. And specifically in the letter, it does say that Mr. Demirchian believes that petitioner's return to Armenia is not safe at this present time. And I think the letter from Mr. Demirchian himself should be considered in a motion to reopen because he is the head of the party and he was a presidential candidate. Well, the motion to reopen was denied by the board, and the reason appears to have been it's... The board didn't revisit the substance so much as it said there's nothing here that couldn't have been presented before, so this isn't a proper basis for a motion to reopen. So that's the decision we review. You've made a written argument to that. You plan to make an oral argument today with regard to that issue. I'm not saying you need to or you should or that's a winner, but to tell me what evidence might have been considered by the board if it decided to consider it by granting the motion to reopen. There's several steps down the board that we don't get to until the motion to reopen is granted. Right. Well, I just want to bring that to the court's attention that Mr. Demirchian actually wrote a letter to the government. I also want to bring to the court's attention that there was several interpreter issues. The record is rife with the immigration judge saying that she can't understand what's going on, and that for the interpreter to slow down or to speak up, and for the interpreter to control the witness. And we don't believe that the petitioner got a fair hearing under his due process rights because there could be inaccurate interpretation. And if the immigration judge cannot understand what's going on, then she may have missed specific instances described by the petitioner in support of his claim. Do you wish to reserve the balance of your time? Yes, Your Honor. You may do so. Now we're here for counsel for the Attorney General. Good morning again. Scott Rompel on behalf of the Attorney General. Welcome back. Thank you. May it please the Court. The Court should deny this petition for review because the petitioner has failed to provide objectively reasonable proof that he would face persecution if he's returned to Armenia. The agency recently determined that he would not in any case be entitled to asylum as a result of this petition. He was given a full and fair hearing, and his motion to reopen was properly denied because he failed to present any new or previously unavailable evidence. And I'll start with whether or not he provided any objectively reasonable fear of persecution, because that seems to be the main concern of the Court. And I think the Court alluded to a lot of the problems with the testimony that was presented. It's simply not specific, and it begs the question, if he returned, what would happen and why? And there really was no specific information that was presented related to his role in the People's Party of Armenia, even here in the United States. He admitted that he wasn't even a regular member and that he didn't even hold any real position. And he was pressed repeatedly to try to explain what exactly his duties were in the United States related to his PPA role. And still he couldn't provide any specifics. He couldn't say what the party does, what it stands for, anything. Really the only specific information, and this is when he was pressed, when he was pressed repeatedly, please provide us with specific information. The only thing that he said is that when Demirchian came into the United States, that he would host him. But that was only one or two times. He said that in the past 15 years, Demirchian has only come to the United States three times, one in 2002 and one in 2004. He only stayed for a few days. So that's it. There's nothing else specifically that he said that he did here, much less what would take place in Armenia, if he were to be returned. And to answer Your Honor's question from before related to what the aide to the consul said, it's in the record on page 164, line 18. And what the record says is, don't think I'm the only one who knows about your family ties. Armenia knows about it, so don't even try to go to Armenia. There was nothing specific. It was more along the lines of even if this statement actually did take place, of two people quibbling over whatever the issue may have been. Obviously, they were on competing political sides, and it would not be any surprise if they were to have an argument about those competing political sides. Other than that, there's really nothing in the record related to the specifics. And regarding the country port, which would be the only other objective evidence, certainly it doesn't say that nothing bad ever happens in Armenia. And obviously, I would concede that point. And it says that there were instances leading up to the election where some supporters were arrested, but that most of these arrests really did have to do with people demonstrating without having a permit. And what the record does say on page 302 is that the government regularly granted permits to demonstrators. So there really is nothing as to what's going to happen to this individual should he return. And there were just vague claims made related to family members and family members who have been injured. And all of the family members who supposedly were injured, this only took place in less than a page of the testimony. And there's no indication as to what happened, why, or anything to link it to his claim, and certainly nothing that would compel a conclusion that somehow if he was returned to Armenia, he would be persecuted for any reason. The only thing even resembling a specific information, and I think it was a counselor petitioner tried to allude to this, had to do with his mother-in-law. And even there, what he said was that they went to his mother-in-law's house because people in Armenia were looking for him. Well, if people are looking for him in Armenia, then of course it means it would contradict what he said about everyone knowing who he is and that he's working for Demircian in the United States. And this goes to something that was pointed out by Respondent in the 20HA letter, related to even if somebody's found credible the case was Gu v. Gonzalez, that even if somebody is deemed credible or found to be credible, it still doesn't mean you can credit everything that they say because if two things are entirely contradictory, it necessarily follows that one of them at least has to be false. And the same thing would apply what Gu specifically said, had to do with statements that are relayed by a petitioner about hearsay, what happened supposedly other people said in Armenia or in a third country or even at the consulate, that it's not necessarily entitled to the same probative value as with somebody's own words. So for those reasons, that's why there was no objectively reasonable fear of persecution. But in the alternative, the immigration judge also reasonably determined that this individual was not entitled to asylum as a matter of discretion. And the immigration judge pointed to three very specific reasons related to history, criminal record history. One was in 1996 when the petitioner was arrested and convicted for illegally copying movies. The second had to do with in July of 2002 when he was arrested for the possession, manufacture, or sale of a dangerous weapon and then he was convicted of disorderly conduct. I think the exact words are making a loud noise. And the third instance was a few months before the trial when he was arrested for DUI. So the immigration judge acted well within her discretion in determining that in the alternative, this petitioner wouldn't be entitled to asylum as a matter of discretion. Counsel for petitioner also alluded to potentially him not getting a fair hearing and maintaining that perhaps there was some sort of due process issue. And that, of course, begs the question because in order to be able to have a valid due process claim, there has to be some sort of prejudice. Nothing at all has been presented to show why, in fact, what information would have been presented that was not beyond the unspecific and vague testimony that was provided by the petitioner. And on that reason alone, there's no due process violation. There were instances where the immigration judge did cut off certain questions that were asked. But this was towards the end of the proceeding. It had to do not with the petitioner but a witness that the petitioner had. And, again, as I said before, there's nothing in the record related to anything that would have been said that somehow didn't come out or wasn't actually considered in the record. And I would also point out related to this, to the due process issue, that there's also numerous instances in the transcript where the immigration judge sustained objections by counsel for a petitioner and or overruled statements that the counsel for the government tried to make. And in addition to that, right at the beginning of the trial, when it was determined that the petitions would be consolidated into one hearing, counsel for the petitioner tried to escort the wife out of the courtroom. And it was the immigration judge who said she absolutely has a due process right to be in this courtroom, even if she's not going to be testifying, because it concerns her. So the immigration judge went through many lengths to make sure that the individual in this case had a full and fair hearing. And I'll just close by talking briefly about the motion to reopen, which is the final issue. And for a motion to reopen, for a discretionary grant of a motion to reopen, an alien must establish that the new evidence presented was previously unavailable and material. And that's really what the problem is with the motion to reopen. None of it was new or previously unavailable. And quite frankly, some of it was already in the record. For example, there was a Los Angeles Times article. It was already in the record. The undated letter from Stephen Demirchian, that wasn't in the record, but, of course, it wasn't previously unavailable. The Petitioner in this case just chose not to get it prior to this time. And while it's not substantive evidence for the underlying petition for review, the letter by Stephen Demirchian actually contradicts his statement anyway that he doesn't have a position by saying that he has a very specific position in the PPA. So for all of these reasons, unless the Court has any question, I'll yield my time and just ask that the Court deny the petition for review. Thank you. Thank you for the argument. And we'll hear from Petitioner's counsel for rebuttal. I just want to address the issue of the IJ's discretionary finding that the petitioners are not eligible for asylum on a discretionary basis. The conviction for disturbance of the peace, although the underlying factors would not be considered in normal instance, but the underlying factors, ironically, are a confrontation that Petitioner had with the opposing party members or the Dachshund members who supported the Kocharian regime who is currently in power. And the arrest was because of a phone call made by the Dachshund party for the police to come over and arrest the Petitioner. Are you suggesting that the LAPD or whoever they called is part of the organization that he's opposing? I am not, Your Honor. What I am suggesting is the underlying conviction goes to actually his claim for asylum in that he was actually having an altercation with the opposing party. In the United States. In the United States. Which led to a criminal conviction in the United States. Correct, Your Honor, but that's my argument. Thank you. Thank you. We thank both counsel for the argument. The case just argued is submitted. That concludes the cases in this morning's calendar, and we are adjourned.
judges: Noonan, Clifton, Bybee